**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| JEROME GOODMAN, | : | **Civil No. 10-1247 (FLW)** |
| | : | |
| Plaintiff, | : | |
| v. | : | **OPINION** |
| | : | |
| GOLDMAN, SACHS & CO., | : | |
| | : | |
| Defendant. | : | |
| | : | |

WOLFSON, United States District Judge:

Plaintiff Jerome Goodman ("Plaintiff" or "Goodman") brings this action against Defendant Goldman, Sachs & Co. ("Defendant" or "Goldman Sachs")[1], alleging that Goldman Sachs failed to advise him to decrease or divest his investments in the now-infamous Madoff Fund. As a result of Goldman Sachs' actions, Plaintiff asserts that he lost his life savings of over 15 million dollars. Plaintiff's claims sound in breach of fiduciary duty, negligent misrepresentation, and gross negligence. Defendant moves to dismiss these claims, arguing that New York law applies and that the claims were filed beyond the statutory limitations period under New York law, are preempted by New York law, and are otherwise insufficiently plead under Federal Rule of Civil Procedure 12(b)(6). While the Court concludes that a final determination on choice of law is premature at this pleading stage, applying the law of the forum state of New Jersey, the Court nonetheless grants Defendant's motion, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.    BACKGROUND AND PROCEDURAL HISTORY

---

[1]    The Complaint initially denoted The Goldman Sachs Group, Inc. as Defendant. By stipulation of the parties entered June 25, 2010, Goldman, Sachs & Co. was substituted as the proper Defendant.

As I must on a motion to dismiss, I take the following allegations from Plaintiff's Complaint as true. Plaintiff is a 69 year old retiree, who lives with his wife in New Jersey. Compl., ¶ 33. Beginning in 1971, Plaintiff owned and operated North Shore Agency, Inc., a collection agency based in Long Island, New York. Id. at ¶ 38. In 1997, Plaintiff sold the business for approximately 20 million dollars. Id. This amount represented "virtually all of [Plaintiff's] net worth." Id. at ¶ 39. According to Plaintiff, he was, and still is, an unsophisticated investor. Id. at ¶ 33.

In or around 1998, Plaintiff invested the bulk of his funds with The Ayco Company, L.P. ("Ayco")[1], a company he retained as his financial advisor. Id. at ¶ 44. Ayco advised Plaintiff to first invest 4 million dollars in the Madoff Fund in 1998, and then to increase his investment to 12 million dollars in 2004. Id. at ¶ 50. By September 2008, Plaintiff was investing 15 million dollars in the Madoff Fund. Id. According to Plaintiff, these figures represent, respectively, 26%, 70% and 87% of Plaintiff's assets. Id. at ¶ 51. Plaintiff alleges that, throughout this time frame, Ayco led him to believe that it was properly taking into consideration his risk tolerance in advising him to invest such a large percentage of his net worth in the Madoff Fund. Id. at 49.

Meanwhile, Ayco was purchased by Goldman Sachs, a New York-based company, in or around 2003.[2] On Ayco's letterhead, Ayco was identified as "a Goldman Sachs Company." Id. at 53. Shortly thereafter, in or around late 2003 or early 2004, Larry Abrahams ("Abrahams"), an employee of Ayco, contacted Plaintiff's family ("the Goodman Family") to inform Plaintiff of Goldman Sachs' purchase of Ayco. Id. at ¶ 54. (Indeed, it is alleged throughout the Complaint that communications intended for Plaintiff were often made to the Goodman Family or to Plaintiff's son, Kevin Goodman. See e.g., id. at ¶¶ 58, 64.) Plaintiff alleges that Abrahams and other Ayco

---

[1]   Ayco is not named as a party to this litigation, presumably because Plaintiff and Ayco have an arbitration clause in an investment advisor agreement dated May 7, 2008, that calls for application of New York law. See Del Sordo Decl., Exh. 2 at ¶¶ 15, 16.

[2]   Plaintiff alleges that Goldman Sachs' principal place of business is in New York. Compl., ¶ 34.

representatives told the Goodman Family, both verbally and in writing, that Goldman Sachs would work "in tandem" with Ayco to provide financial advisory services to Plaintiff.  Id. at ¶ 55. Abrahams then requested permission from the Goodman Family to share Plaintiff's confidential financial information with Goldman Sachs.  Id. at ¶ 58.  After permission was granted, Abrahams proposed a meeting to Kevin Goodman by email dated January 28, 2004, which email stated:

> [Goldman Sachs] is giving us a platform in terms of investment recommendations and managing client portfolios that we never had. . . . We now have access to two things we never had before at Ayco: a huge choice of hedge funds for clients and investment professionals to supplement what we do at Ayco.  While I certainly can make recommendations . . . your family will be better served by bringing someone to supplement me.  The focus of the meeting would be: what is their value added as it relates to Madoff substitutes

Id. at ¶ 57.  There is no allegation in the Complaint that Plaintiff ever entered into a retainer agreement with Goldman Sachs.

In or around the spring of 2004, Abrahams along with Christopher Duda ("Duda"), Vice President of the Private Wealth Management Group of Goldman Sachs, contacted the Goodman Family to schedule the proposed meeting ("the 2004 Meeting").  Id. at 64.  The purpose of the meeting was for Goldman Sachs to present its investment advice to Plaintiff.  Id. at ¶ 64.  Plaintiff, however, did not attend the meeting—his son Kevin Goodman attended it instead.  Id. at ¶ 65.  The meeting took place in or around May 2004, at the Seven Seas diner in Great Neck, New York.  At the meeting, Duda made a presentation to Kevin Goodman in which he recommended that Plaintiff maintain at least 7 million dollars in the Madoff Fund and transfer 5 million dollars to Goldman Sachs hedge funds, which funds were in the same category of higher risk "alternative investments" as the Madoff Fund.  Id. at ¶ 67.  Plaintiff alleges that Goldman Sachs advised him to leave at least 7 million in the Madoff Fund despite an alleged internal ban through which Goldman Sachs had

prohibited its own asset managers from investing in that fund.  Id. at ¶ 66.  Notably, Plaintiff does not allege that he heeded Goldman Sachs' advice to transfer 5 million dollars to Goldman Sachs' hedge funds.   It appears from the Complaint that he left all of his investment in the Madoff Fund.

In the most general fashion, Plaintiff alleges that Goldman Sachs "maintain[ed] direct contact with the Goodman Family in the years following the 2004 [M]eeting."  Id. at ¶ 75.  The Complaint does not allege how many, or in which, "years" Goldman Sachs maintained contact.  In addition, the Complaint does not point to any specific communications, their subject matter, or whether the communications were oral or written.

In 2008, Plaintiff alleges that Jerry DelSordo ("DelSordo"), another representative at Ayco, falsely advised Plaintiff that his investments in the Madoff Fund were insured for full face value by private insurance.  Id. at ¶ 77.  By way of example, Plaintiff points to an email from DelSordo dated October 10, 2008.  In that email, DelSordo states that "[u]nder the consumer protection act, your net equity assets are covered even if the firm were to go bankrupt.  In cases, [sic] of fraud or missing assets, SIPC covers up to $500,000, and I was told they have insurance such as CAPCO that covers the amounts exceeding $500,000.  Id. at ¶ 78 (emphasis in original).

In short, Plaintiff alleges that he would have divested himself from the Madoff Fund if Goldman Sachs had warned him that his principal was at risk because it was "dangerously over-concentrated in a single investment," or if Goldman Sachs had informed him of its alleged internal ban against investing with Madoff.  Id. at ¶ 81.  Plaintiff filed his Complaint on March 9, 2010, asserting claims sounding in breach of fiduciary duty, negligent misrepresentation, and gross negligence.  After being granted an extension of time to answer, Defendant filed the instant motion to dismiss on statute of limitations, preemption, and Rule 12(b)(6) grounds.  The Court now rules upon Defendant's motion.      For the following reasons, Defendant's motion is granted.

4

## II.    STANDARD OF REVIEW

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted).  In Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court clarified the 12(b)(6) standard. Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 1968 (quoting Conley, 355 U.S. at 45-46). Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." Id. at 1965. As the Third Circuit has stated, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 127 S.Ct. at 1965).

The Third Circuit recently reiterated that "judging the sufficiency of a pleading is a context-dependent exercise" and "[s]ome claims require more factual explication than others to state a plausible claim for relief."  West Penn Allegheny Health System, Inc. v. UPMC, --- F.3d ----, 2010 WL 4840093, *8 (3d Cir., Nov. 29, 2010).  This means that, "[f]or example, it generally takes fewer factual allegations to state a claim for simple battery than to state a claim for antitrust conspiracy."

Id. That said, the Rule 8 pleading standard is to be applied "with the same level of rigor in all civil actions." id. at *7 (quoting Ashcroft v. Iqbal, ---U.S. ----, 129 S.Ct. 1937, 1953, 173 L.Ed.2d 868 (2009)).

A court generally may not consider matters outside the pleadings when ruling on a motion to dismiss. However, the court may rely on documents "integral to or explicitly relied upon in the complaint." In re Rockefeller Ctr. Props. Sec. Litig., 184 F.3d 280, 292-93 (3d Cir.1999). In addition, public documents and prior judicial proceedings may be considered in deciding a motion to dismiss. See Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd., 181 F.3d 410, 426 (3d Cir.1999); see also Herring v. United States, 2004 WL 2040272, at *7 (E.D.Pa. Sept.10, 2004). When relying on such documents, the court need not convert the motion to dismiss into one for summary judgment. In re Rockefeller Ctr. Props. Sec. Litig., 184 F.3d at 292-93.

## III. DISCUSSION

Defendant makes three arguments in support of its motion to dismiss—that Plaintiff's claims are time barred, the Complaint fails to state a claim for which relief can be granted, and preemption under New York law. Because Plaintiff argues that New Jersey law should apply, this Court must first address choice of law principles in connection with each claim. For the reasons that follow, I conclude that there is insufficient factual development at this stage for the Court to make a final choice of law ruling. Instead, I find it appropriate to apply New Jersey law at this juncture and conclude that Plaintiff fails to state a claim with respect to each of his causes of action.

### A.     Choice of Law

As a federal district court sitting in diversity, this Court must apply the choice of law rules of the forum state of New Jersey. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Warriner v. Stanton, 475 F.3d 497, 499-500 (3d Cir. 2007). In so doing,

6

the Court must accept the decisions of the highest state court as the ultimate authority on state law. Edwards v. HOVENSA, LLC, 497 F.3d 355, 361 (3d Cir. 2007).  Where the highest state court has not spoken on a particular issue, the Court must predict how the highest court would rule by giving due regard to the decisions of lower courts in the state.  Id.

New Jersey generally applies the Restatement's "most significant relationship" test to tort claims.  P.V. v. Camp Jaycee, 197 N.J. 132, 142-43 (2008).  In applying the test, courts must first determine whether there is an actual conflict between the competing state laws.  "The second prong of the most significant relationship test requires the court to weigh the factors enumerated in the Restatement section corresponding to the plaintiff['s] cause of action."  Nafar v. Hollywood Tanning Sys., Inc., 339 Fed.Appx. 216, 220 (3d Cir. 2009) (citing Camp Jaycee, 197 N.J. at ___). Those sections may further require courts to consider general conflict of law factors enumerated in Restatement § 6.  See e.g., Restatement (2d) Conflicts, § 148 (1) (directing that "the local law of this state determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied."); Buccilli v. Nat. R.R. Passenger Corp., Civ. No. 08-4214, 2010 WL 624113, *5 (D.N.J., Feb. 17, 2010) (applying § 6 factors to negligence claim).

Restatement (2d) Conflicts § 148 applies specifically to negligent misrepresentation claims. See Nafar, 339 Fed.Appx. at 220 (applying § 148 to misrepresentation claims); In re Mercedes-Benz Tele Aid Contract Litig., 267 F.R.D. 113, 124-25 (D.N.J. 2010) (discussing Nafar); Intarome Fragrance & Flavor Corp. v. Zarkades, Civ. No. 07-873, 2009 WL 931036, *6-10 (D.N.J. Mar. 30, 2009).  There is no specific section of the Restatement that applies to breach of fiduciary duty claims, thus, courts apply the factors of Restatement § 145(2)—the catch-all tort section—to said

claims.  Clark v. Prudential Ins. Co. of America, Civ. No. 08-6197, 2009 WL 2959801, *17 (D.N.J.,

Sept. 15, 2009) (collecting cases).  The same is true for Plaintiff's "gross negligence" claim, for which

there is no specifically applicable Restatement section.  See Air Prods. and Chem., Inc., v. Eaton

Metal Prods. Co., 227 F.Supp.2d 482, 502 (E.D.Pa. 2003) (applying general torts provision—§

145—to negligent provision of services claim because such a claim "does not fall within any special

[Restatement] rule").  I address each of Plaintiff's claims in turn.

B.       Negligent Misrepresentation

Based on Plaintiff's allegations, either New Jersey or New York law could potentially apply

to his negligent misrepresentation claim.  Defendant argues that the statute of limitations periods

differ under New Jersey and New York law; however, it is not clear from New York law that

Defendant is correct.  For negligent misrepresentation claims, New Jersey does not have a specific

limitations statute, but applies a general six-year statute of limitations pursuant to N.J.S.A. 2A:14-1.

Mirra v. Holland America Line, 331 N.J.Super. 86, 90-92 (App. Div. 2000) (affirming application of

N.J.S.A. 2A:14-1's six-year limitations period to negligent misrepresentation claim); Intrarome, 2009

WL 931036 at *11 (citing N.J.S.A. 2A:14-1).  New York also has no specific statute of limitations for

such claims, but New York courts look to whether the allegations underlying the negligent

misrepresentation claim sound in fraud or negligence/malpractice.  Fromer v. Yogel, 50 F.Supp.2d

227, 242 (S.D.N.Y. 1999) (collecting cases).  If the claim sounds in fraud, New York's six-year

limitations period for fraud actions is applied.  S.E.C. v. Lee, --- F.Supp.2d ----, 2010 WL 2594280,

(S.D.N.Y., Jun. 18, 2010).  Conversely, if the claim sounds in negligence or malpractice, New York's

three-year limitations period for negligence actions is applied.[3]  See  Colon v. Banco Popular North

---

[3]        Unlike New York, New Jersey has a six-year limitations period for malpractice actions.  See
O'Boyle v. Braverman, 337 Fed.Appx. 162, 165 (3d Cir. 2009) (citing McGrogan v. Till, 167 N.J.
414, 426 (2001)).

America, 874 N.Y.S.2d 44, 44 (N.Y. App. Div. 2009); HSBC Bank USA v. Bond, Schoeneck and King, PLLC, 838 N.Y.S.2d 419, 435 (N.Y. App. Div. 2007) reversed on other grounds by 866 N.Y.S.2d 469 (N.Y. App. Div. 2008).

The only allegation Plaintiff makes in connection with his negligent misrepresentation claim is Ayco-employee DelSordo's statement in a 2008 email that Plaintiff's investment in the Madoff Fund was insured at full value. [4] See Pl. Opp. at 18; Compl., ¶¶ 97-102. In that email, DelSordo indicated that he had confirmed the existence of the insurance with Goldman Sachs. At this early stage in the litigation, the Court cannot definitively predict whether New York would apply its three-year or six-year limitations period to Plaintiff's claim because this allegation sounds both in fraud and negligence. Neither party has briefed how New York would construe Plaintiff's claims, as sounding either in negligence or in fraud; Defendant has merely assumed that the three-year limitations period for negligence claims applies. With the benefit of discovery, the Court would have additional facts from which to determine which statute of limitations period applies. Accordingly, the Court cannot determine if there is an actual conflict between New Jersey and New York with respect to the applicable limitations period and must look, instead, to the substance of New Jersey's and New York's negligent misrepresentation claims to determine if an actual conflict exists.

To state a claim for negligent misrepresentation under New Jersey law, a plaintiff must allege that "1) the defendant negligently provided false information; 2) the plaintiff was a reasonably foreseeable recipient of that information; 3) the plaintiff justifiably relied on the information; and 4) the false statements were a proximate cause of the plaintiff's damages." Kaufman v. i-Stat Corp., 165 N.J. 94, 109 (2000) ("Negligent misrepresentation is … [a]n incorrect statement, negligently

---

[4]     Indeed, Defendant argues that Plaintiff concedes in his opposition brief that the negligent misrepresentation claim is limited to the 2008 email from DelSordo relating to private investment insurance.

made and justifiably relied on, [and] may be the basis for recovery of damages for economic loss ... sustained as a consequence of that reliance."); Singer v. Beach Trading Co., Inc., 379 N.J.Super. 63, 73 (App. Div. 2005).  Such a claim may be based on an affirmative misrepresentation or an omission.  Highlands Ins. Co. v. Hobbs Group, LLC., 373 F.3d 347, 355 (3d Cir. 2004) (citing Strawn v. Canuso, 140 N.J.43 (1995) superceded on other grounds by N.J.S.A. 46:3C-1).  For claims based upon an omission, "the New Jersey caselaw that allows . . . a claim to be based on the defendant's silence or suppression of truth . . . is not limited to special relationship situations such as those involving transactions within explicit fiduciary relationships …." Id.  Rather, "transactions where a quasifiduciary relationship develops either through the express conduct of the parties or other circumstances particular to that individual transaction or transactions (such as insurance) whose nature inherently requires such a duty regardless of the parties' intentions" may suffice.  Id.  "In addition, the required duty of disclosure may also arise in any situation called for by good faith and common decency." Id.  See e.g., Bonnieview Homeowners Ass'n v. Woodmont Builders, L.L.C., 655 F.Supp.2d 473, 518 (D.N.J. 2009) (finding duty on the part of residential real estate broker to purchasers).  As with any negligence-based claim, the defendant must owe a duty of disclosure to the plaintiff, and whether a duty exists "is a question of law for the court." Singer, 379 N.J.Super. at 73 (citing Petrillo v. Bachenberg, 139 N.J. 472, 479 (1995)).  But the duty need not be based on a special relationship; "the guiding principle for the imposition of liability is fairness to both the party making the representation and to the party aggrieved by its dissemination." Id.

In contrast, to state a claim under New York law, a plaintiff must allege that "(1) the defendant had a duty, *as a result of a special relationship*, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a

10

serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." Glidepath Holding B.V. v. Spherion Corp., No. 04 Civ. 9758, 2010 WL 1372553, *11 (S.D.N.Y. Mar. 26, 2010) (emphasis added). See also Bostany v. Trump Organization LLC, 901 N.Y.S.2d 207, 208-09 (N.Y. App. Div. 2010) ("Defendants established their entitlement to dismissal of the claim for negligent misrepresentation (count IV) since defendants were nonprofessionals who negotiated an arm's length commercial contract with plaintiff and had no special relationship with him."). Because New York law explicitly requires a plaintiff to allege a "special relationship," there is an actual conflict between New York and New Jersey law. Accord Palladin Partners v. Gaon, No. 05-CV-3305, 2006 WL 2460650, *18 (D.N.J. Aug. 22, 2006) ("New Jersey rather than New York law governs Plaintiffs' common law claims [and] [u]nder New Jersey law, a plaintiff need not prove a special relationship but may prevail on a negligent misrepresentation claim by showing that the defendant negligently made an incorrect statement, upon which the plaintiff justifiably relied.") (internal quotation marks and citations omitted). Therefore, I must apply Restatement § 148 to determine which state's law governs Plaintiff's negligent misrepresentation claim.

Restatement § 148 is comprised of two subsections. Subsection (1) applies only "[w]hen the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations *and* when the plaintiff's action in reliance took place in the state where the false representations were made and received." Restatement (2d) Conflicts, § 148(1). Where those two elements are present in one state, "the local law of [that] state determines the rights and liabilities of the parties ...." Id. This is so "unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in [Restatement] § 6 to the occurrence and the parties, in which event the local law of the other state will be applied." Id.

Subsection (2) applies "[w]hen the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made …." In that instance, the court is to "consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
> (b) the place where the plaintiff received the representations,
> (c) the place where the defendant made the representations,
> (d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Id.

Because Plaintiff alleges that he relied on Defendant's misrepresentation in a different state (New Jersey) than the state in which the alleged misrepresentation was made (New York), the Court will apply the subsection (2) factors. Accord Dow Corning Corp. v. BB & T Corp., Civ. Case No. 09-5637, 2010 WL 4860354, *14 (D.N.J., Nov. 23, 2010) (applying Restatement § 148(2) to negligent misrepresentation claim where misrepresentations were made in New Jersey and Florida but the plaintiff relied upon them in Michigan). Applying the subsection (2) factors to Plaintiff's Complaint, the Court finds that there are sufficient factual allegations to support application of New Jersey law at this juncture, though additional factual development is necessary for a final choice of law determination. As an initial matter, the Court rejects Defendant's argument that the Court should consider the location of Plaintiff's former business as a contact with New York. The location of Plaintiff's former business is wholly irrelevant to Plaintiff's negligent misrepresentation claim.

Plaintiff's other allegations, e.g., that he acted in reliance upon defendant's representation at his home in New Jersey and that he resides in New Jersey both point to application of New Jersey law. The location of Plaintiff's residence (or domicile) is an important contact favoring application of New Jersey law. <u>See</u> Restatement § 148, Comment i ("The domicil, residence and place of business of the plaintiff are more important than are similar contacts on the part of the defendant."). More factual development is needed with respect to the state from which DelSordo sent the 2008 insurance email. The location from which the misrepresentations were made is critical "[w]hen the loss is pecuniary in its nature, [because] the place of loss is far more difficult to locate than when the damage consists of physical injury to persons or to tangible things." Restatement § 148, Comment c. In such an instance, "[t]he place where the defendant made his false representations . . . is as important a contact in the selection of the law governing actions for fraud and misrepresentation as is the place of the defendant's conduct in the case of injuries to persons or to tangible things." <u>Id.</u>

In terms of those factors that favor New York, Goldman Sachs' place of incorporation is in New York and the investment funds were held in that state. This factor, as noted, is not entitled to as much weight as Plaintiff's domicile. Moreover, Goldman Sachs maintains a place of business in New Jersey and the Complaint alleges that the professional services were to be performed in both New York, in terms of monitoring Plaintiff's account, and New Jersey, in terms of communication with Plaintiff and the Goodman Family.

Ultimately, the Court finds that there are sufficient facts plead in the Complaint to justify application of New Jersey law at this early pleading stage in the litigation.[5] However, because the

---

[5]       Application of the Restatement (2d) Conflicts, § 6 factors buttresses my conclusion. "Reduced to their essence, the section 6 principles are: '(1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration; and (5) the competing interests of the states." <u>Camp Jaycee</u>, <u>supra</u> at 147 (internal citations omitted); Restatement, § 148 (Comments, c-d). For example, under the facts plead in the Complaint, New Jersey has a greater competing interest in protecting the life savings of its residents

factual record is not fully developed and there are several contacts with the State of New York, if this case were to proceed, the Court would defer its final choice of law determination for a later date.  Accord Arcand v. Brother Int'l Corp., 673 F.Supp.2d 282, 295-96 (D.N.J. 2009); Harper v. LG Electronics, USA, Inc., 595 F.Supp.2d 486, 490 (D.N.J. 2009).  The Court now turns to whether Defendant's motion to dismiss should be granted under New Jersey law.

Appling New Jersey law, Defendant's statute of limitations challenge evaporates.  In regards to Defendant's substantive challenge, Goldman Sachs argues first that Plaintiff fails to state a claim because he does not allege that Goldman Sachs had a special relationship with him.  As noted, however, New Jersey does not require proof of a special relationship, such as a fiduciary relationship, as an element of a negligent misrepresentation claim.

In addition, Defendant argues, the 2008 email is from an Ayco employee—not Goldman Sachs—and, therefore, cannot support a negligent misrepresentation claim against Goldman Sachs. On this point, Defendant is correct.  The actions of a subsidiary corporation can be imputed to a parent where exists an agency relationship between the two:

> An agency relationship is created when one party consents to have
> another act on its behalf, with the principal controlling and directing
> the acts of the agent.  There need not be an agreement between
> parties specifying an agency relationship; rather, 'the law will look at
> their conduct and not to their intent or their words as between
> themselves but to their factual relation.'

Sears Mortg. Co. v. Rose, 134 N.J. 326, 337 (1993) (internal citations omitted).  The relationship may be based on actual agency or apparent agency.  For apparent agency, there must be a manifestation by the principal upon which the plaintiff reasonably relied to his detriment.  New Jersey Lawyers Fund for Client Prot. V. Stewart Title Guar. Co., 203 N.J. 208, 221 (2010) (citing Restatement

---

than does New York in regulating the conduct of business who are not incorporated in their state, but merely have a principal place of business therein.

(Third) Of Agency, §2.03 (2006)).  The requirement of manifestation by the principal is a critical

one.  Restatement (Third) Of Agency, §3.03 (2006).  According to the Restatement,

> [t]he fact that one party performs a service that facilitates the other's
> business does not constitute such a manifestation.  For example, by
> clearing securities trades for another firm, a securities broker does
> not make a manifestation to customers of the firm sending the orders
> that it acts with the authority of the clearing firm.

Id.

Here, Plaintiff does not allege any facts indicating that Goldman Sachs acted in a manner to

suggest to Plaintiff that it had appointed Ayco, or its employees, as agents of Goldman Sachs.

Rather, Plaintiff merely describes, in a conclusory fashion, DelSordo's email as a misrepresentation

birthed by Goldman Sachs.  Indeed, the only action by Goldman Sachs referenced in the entire

Complaint is the presentation at the 2004 Meeting by Duda.  In my view, this one meeting, several

years prior to DelSordo's email, is too attenuated to create an apparent agency relationship that

extended throughout the four-year period between 2004 and 2008.  While "[a] principal's *inaction*

[may] create apparent authority when it provides a basis for a third party reasonably to be believe the

principal intentionally acquiesces in the agent's representations or actions [where] the [plaintiff] has

observed prior interactions between the agent and the principal, [and the subsequent behavior]

conforms to the prior pattern observed by the third party," Id., Comment *e* (emphasis added),  there

was no pattern of prior conduct here—only the one meeting.  For these reasons, I conclude that

Plaintiff has failed to state a claim for negligent misrepresentation against Goldman Sachs based on

Ayco's employee's conduct.  Accordingly, Defendant's motion to dismiss is granted with respect to

Plaintiff's negligent misrepresentation claim.

    C.    Breach of Fiduciary Duty

15

There is no conflict with respect to the statutes of limitations applicable to breach of fiduciary duty claims in New Jersey and New York. Under New Jersey law, breach of fiduciary duty claims are subject to a six-year limitations period. Green v. Fund Asset Mgmt., L.P., 245 F.3d 214, 226 n. 13 (3d Cir. 2001). See Balliet v. Fennell, 368 N.J.Super. 15, 19 (App. Div. 2004) (holding that, where harm is to plaintiff's person, as opposed to property, the two-year statute of limitations for torts resulting in personal injury may apply). Under New York law, by contrast, either a six-year or a three-year limitations period may apply depending upon the nature of the underlying allegations and the relief sought:

> New York law does not provide a single statute of limitations for breach of fiduciary duty claims. Rather, the choice of the applicable limitations period depends on the substantive remedy that the plaintiff seeks …. Where the remedy sought is purely monetary in nature, courts construe the suit as alleging "injury to property" within the meaning of CPLR 214(4), which has a three-year limitations period …. Where, however, the relief sought is equitable in nature, the six-year limitations period of CPLR 213(1) applies …. Moreover, where an allegation of fraud is essential to a breach of fiduciary duty claim, courts have applied a six-year statute of limitations under CPLR 213(8) ….

IDT Corp. v. Morgan Stanley Dean Witter & Co., 12 N.Y.3d 132, 139 (N.Y. 2009)

While Defendant contends that the three-year limitations period applies to Plaintiff's breach of fiduciary duty claim, New York case law makes clear that, where fraud allegations are essential to such a claim, then the six-year limitations period for fraud applies. IDT Corp., 12 N.Y.3d at 140; Paolucci v. Mauro, 903 N.Y.S.2d 584, 587 (N.Y. App. Div. 2010). This is so whether or not the complaint uses the word "fraud"; courts are to "look for the reality, and the essence of the action and not its mere name." Paolucci, 903 N.Y.S.2d at 587 (quotation omitted). As long as the allegations assert that the defendant knowingly misrepresented a material fact, or "fail[ed] to disclose material facts when the fiduciary had a duty to disclose and acted with the intent to deceive," and

that the plaintiff relied on that misrepresentation or omission, the six-year limitations period applies.
Id.

Here, Plaintiff's Complaint asserts that Defendant (1) failed to disclose material facts despite
its alleged fiduciary relationship with Plaintiff, and (2) intended to deceive Plaintiff for its own
pecuniary gain. See Compl., ¶¶ 92-93. One factual example in Plaintiff's Complaint is the allegation
that Goldman Sachs failed to inform him of its alleged internal ban against investing with the
Madoff Fund. Further, Plaintiff alleges that he relied on Goldman Sachs' failure to inform him of
this alleged ban as well as Goldman Sachs' advice to retain at least a portion of his investment in the
fund. Under this set of facts, New York would apply the six-year limitations period to his claim. Cf.
Benedict v. Whitman Breed Abbott & Morgan, --- N.Y.S.2d ----, 2010 WL 4258815, * 1 (N.Y. App.
Div., Oct. 26, 2010) (applying six-year statute of limitations to breach of fiduciary claim where
plaintiff-heirs alleged that "defendants exerted undue influence over their mother, the family
matriarch, . . . causing her to breach a special fiduciary duty to them in voting their shares, pursuant
to a proxy, to approve certain self-dealing transactions of the advisors"). Accordingly, the Court
finds no actual conflict based on the two state's statute of limitations and must turn, instead, to the
underlying substantive law to determine if an actual conflict exists.

Under New York law, "[t]he elements of a cause of action to recover damages for breach of
fiduciary duty are (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and
(3) damages directly caused by the defendant's misconduct." Rut v. Young Adult Institute, Inc., 901
N.Y.S.2d 715, 717 (N.Y. App. Div. 2010). Similarly, "[i]n order to establish a cause of action for a
breach of fiduciary duty in New Jersey, a plaintiff must show that the defendant had a duty to the
plaintiff, that the duty was breached, that injury to plaintiff occurred as a result of the breach, and
that the defendant caused that injury." St. Matthew's Baptist Church v. Wachovia Bank Nat. Ass'n,

No. Civ.A. 04-4540, 2005 WL 1199045, * 9 (D.N.J. May 18, 2005) (citing  In re ORFA Sec. Litig.,

654 F.Supp. 1449, 1457 (D.N.J. 1987)).  Further, under New Jersey law,

> The essence of a fiduciary relationship is that one party places trust
> and confidence in another who is in a dominant or superior position.
> A fiduciary relationship arises between two persons when one person
> is under a duty to act for or give advice for the benefit of another on
> matters within the scope of their relationship. The fiduciary's
> obligations to the dependent party include a duty of loyalty and a
> duty to exercise reasonable skill and care. Accordingly, the fiduciary is
> liable for harm resulting from a breach of the duties imposed by the
> existence of such a relationship.

F.G. v. MacDonnell, 150 N.J. 550, 563-64 (1997) (internal citations omitted).  Indeed, Defendant

acknowledges that the substantive laws for these claims are similar.  Def. Open. Br. at 14, n. 9.

Accordingly, "[u]nder both New York and New Jersey law, a fiduciary duty exists between a broker

and a client where the customer has delegated discretionary trading authority to the broker."

Lautenberg Foundation v. Madoff, Civil Action No. 09-816, 2009 WL 2928913, *7 (D.N.J. Sept. 9,

2009) (internal quotation marks omitted). As Defendant has not pointed to any material difference

between the law of New Jersey and New York, the Court concludes that no actual conflict exists

with respect to Plaintiff's breach of fiduciary duty claim and, consequently, applies the law of the

forum state of New Jersey.

Defendant's primary substantive argument is that Plaitniff fails to allege a fiduciary

relationship between himself and Goldman Sachs. [6]  Indeed, to the extent that Plaintiff's Complaint

---

[6]   Defendant further argues that Plaintiff fails to allege proximate causation because the Complaint
acknowledges that Plaintiff did not follow Goldman Sachs' advice to divest a portion of his funds
from the Madoff Fund, and that Plaintiff has not adequately alleged damages because all profits
from the Madoff Fund pyramid scheme were illusory.  As for proximate causation, Defendant's
argument fails to recognize that Goldman Sachs suggested partial rather than full divestment.  Thus,
Plaintiff could conceivably show proximate cause for that portion Goldman Sachs did not advise
Plaintiff to divest.  In addition, the Court finds Defendant's damages argument specious because it
fails to distinguish between Plaintiff's ability to seek recovery of his principal versus purported
profits.

could be read to assert that Goldman Sachs served as a broker, Plaintiff's claim would fail because he has not alleged that Goldman Sachs possessed discretionary authority over his account. New Jersey law, in accordance with the law of most states, holds that there is no fiduciary relationship between an investor and a broker where the investor maintains a non-discretionary account with the broker, *i.e.*, an account over which the investor maintains control over the investment decisions. See McAdam v. Dean Witter Reynolds, Inc., 896 F.2d 750, 767 (3d Cir. 1990) (collecting cases); see also Estate of Parr v. Buontempo Ins. Svcs., 2006 WL 2620504, *4 (N.J. App. Div. Sept. 8, 2006).[7] The Complaint, however, uses the term "financial advisor" to describe Ayco, Compl., ¶ 9, and appears to suggest that Goldman Sachs served in such a capacity as well. Investment advisors, unlike brokers, serve as fiduciaries on behalf of their clients. See 15 U.S.C. § 80b-6 (creating fiduciary duty for investment advisers under federal law); Krantz v. Prudential Investments Fund Management LLC, 305 F.3d 140, 143 (3d Cir. 2002) (citing Investment Advisors Act of 1940, 15 U.S.C. §§ 80b-1 et seq.). But see United Artists Theatre Co. v. Walton, 315 F.3d 217, 231 n.14 (3d Cir. 2003) ("[W]e do not hold financial advisors . . . to be fiduciaries."). At least one federal court in New Jersey has held that a broker may act as fiduciary if he also dispenses investment advice. Kronfeld v. First Jersey Nat. Bank, 638 F.Supp. 1454, 1467 (D.N.J. 1986) ("If defendant[-stockbrokers] . . . were in a position of advising their customers or were under an obligation of trust or confidence, a fiduciary duty may exist ….").

Defendant's argument, however, is that the facts plead here do not allege a fiduciary relationship between itself and Plaintiff. In its view, the single 2004 Meeting between Duda and Plaintiff's son could not, in and of itself, create an investment advisor relationship from which a fiduciary duty arose. I agree.

---

[7] As noted, New York also recognizes this principle in its case law. See generally de Kwiatkowski v. Bear, Stearns & Co., Inc., 306 F.3d 1293, 1302-03 (2d Cir. 2002).

Under New Jersey law, "[a] fiduciary relationship arises between two persons when one person is under a duty to act for or give advice for the benefit of another on matters *within the scope of their relationship*." F.G., 150 N.J. at 563-64 (emphasis added).  Thus, to sufficiently allege a breach of fiduciary claim, a plaintiff must specify the scope of the relationship with the alleged fiduciary.  The only facts in Plaintiff's Complaint that speak to any direct relationship with Goldman Sachs are that: (1) Duda made a presentation at the 2004 Meeting of a customized investment proposal; and (2) "[d]espite maintaining direct contact with the Goodman Family in the years following the 2004 meeting, Goldman Sachs never rectified, or attempted to rectify, its misconduct." Compl., ¶ 75.  At the 2004 Meeting, Duda merely presented a proposal, albeit a customized one, that Plaintiff never followed.  There are no allegations that Goldman Sachs was retained to provide, or that Plaintiff paid for, any services. Duda's presentation alone cannot suffice to create an investment advisor relationship with a scope that extends beyond that one meeting.  This is not to say that one meeting could never create an investment advisor relationship where, for example, a retainer agreement was signed, or some other agreement regarding a continuing advisory relationship was reached.  There are no facts here, however, plead in that regard.

Plaintiff's allegation that Goldman Sachs "maintain[ed] direct contact" after 2004 also provides no basis for the Court to conclude that a fiduciary relationship may have existed.  This allegation does not specify what sort of contact Goldman Sachs allegedly maintained.  It does not assert the medium of contact, such as email, telephone, or correspondence.  Nor does it hint at the substance of the contacts.

While detailed factual accounts of every contact is not required, as recently explained by the Third Circuit, "[s]ome claims require more factual explication than others." West Penn, 2010 WL 4840093 at *8.  Here, Plaintiff's allegations fail to explicate any facts regarding a direct relationship

with Goldman Sachs beyond the 2004 Meeting. And that one meeting does not "raise a reasonable expectation that discovery will reveal evidence" that Goldman Sachs served as Plaintiff's investment advisor and owed him a fiduciary duty on account of their relationship. Phillips, 515 F.3d at 234 (internal quotation marks omitted).

Plaintiff's allegations regarding the actions of Ayco employees are likewise insufficient to suggest that discovery will reveal an investment advisory relationship on Goldman Sachs' part. In his opposition papers, Plaintiff appears to argue that the actions of Ayco should be imputed to Goldman Sachs through the doctrine of apparent agency. Plaintiff points specifically to those paragraphs of Plaintiff's Complaint detailing Abraham's request that the Goodman Family share Plaintiff's confidential information with Goldman Sachs in order that the latter might prepare its presentation for the 2004 Meeting. See Pl. Opp. at pp. 5-10 (citing Compl., ¶¶ 54-65). However, those paragraphs of the Complaint also do not assert any facts after the 2004 Meeting and, therefore, do not suggest that Goldman Sachs entered into a continuing investment advisor relationship with Plaintiff. The Court appreciates that allegations in other paragraphs of the Complaint regarding Ayco's role as a financial advisor, including the several email communications by Abrahams regarding Plaintiff's investments and the 2008 email from DelSordo regarding the alleged private insurance on Plaintiff's funds, that suggest that *Ayco* owed Plaintiff a fiduciary duty. But, those allegations are insufficient to suggest that *Goldman Sachs* owed Plaintiff such a duty. As Defendant correctly argues, and as explained *supra*, the actions of an alleged agent are alone insufficient to create an apparent agency relationship. New Jersey Lawyers Fund, 203 N.J. at 221; In re Pro Auto Recyclers, Inc., Civil Action No. 06-3134, 2007 WL 275981, *4 (D.N.J., Jan. 26, 2007) (stating that apparent agency may be established based on manifestations of authority by the

21

principal).  Thus, Plaintiff's allegations related to the actions of Ayco employees also fail to allege that Goldman Sachs entered into a fiduciary relationship with him.

In light of Plaintiff's failure to allege that Goldman Sachs maintained discretion over his investments, his breach of fiduciary duty claim fails to state a claim under New Jersey law.[8] Accordingly, Defendant's motion to dismiss is granted with respect to Plaintiff's breach of fiduciary duty claim.  If Plaintiff can legitimately allege manifestations of an apparent agency relationship by Goldman Sachs, or other actions taken by Goldman Sachs employees that indicate the existence of a direct fiduciary relationship, Plaintiff is not foreclosed from filing a Complaint to that effect.

D.      Gross Negligence – Restatement (2d) Conflict, § 145

A claim for "gross negligence" is essentially a negligence claim directed at the "upper reaches of negligent conduct."[9]  Stelluti v. Casapenn Enterprises, LLC, 408 N.J.Super. 435, 457 n.6 (App. Div. 2009); Cowsert v. Macy's East, Inc., 904 N.Y.S.2d 239, 240 (N.Y. App. Div. 2010).  This sort of claim seeks to reach "harmful conduct that, although not intentional, deserves to be treated differently than garden-variety negligence."  Stelluti, 408 N.J.Super. at 458.  See Lemoine v. Cornell

---

[8]  Francis v. United Jersey Bank, 87 N.J. 15 (1981) does not compel a contrary result.  In that case, the New Jersey Supreme Court held that a fiduciary relationship existed between a reinsurance brokerage firm who had misappropriated a plaintiff-client's funds.  Id. at 37-38.  The Court reasoned that the nature of the firm's relationship with its clients was akin to that of a bank and its depositors:

> As a reinsurance broker, [defendant] received annually as a fiduciary millions of dollars of clients' money which it was under a duty to segregate. To this extent, it resembled a bank rather than a small family business. . . . All parties agree that [defendant] held the misappropriated funds in an implied trust. That trust relationship gave rise to a fiduciary duty to guard the funds with fidelity and good faith.

Id. at 38.  Here, by contrast, there are no allegations of commingling or improper diversion of assets—only ill investment advice.

[9]  In some instances, at least under New Jersey law, "gross negligence" is used interchangeably to refer to reckless or palpably unreasonable conduct.  Id. at 458-59.

University, 769 N.Y.S.2d 313, 316 (N.Y. App. Div. 2003) ("[G]ross negligence is reckless conduct that *borders on intentional wrongdoing* and is 'different in kind and degree' from ordinary negligence.") (emphasis added).  One key difference between "gross negligence" and negligence is that only the latter may be waived through a contractual exculpatory clause.  Stelluti, 408 N.J.Super. at 460-61; Abacus Federal Sav. Bank v. ADT Sec. Services, Inc., 908 N.Y.S.2d 654, 656 (N.Y. App. Div. 2010) (" [U]nder New York law, . . .as a matter of public policy, a party may not contractually insulate itself from liability caused by its own grossly negligent conduct.").

New York applies a three year limitations period for gross negligence claims related to the provision of professional services.  Fred Smith Plumbing and Heating Co., Inc. v. Christensen, 649 N.Y.S.2d 684, 685 (N.Y. App. Div. 1996) ("A cause of action alleging professional malpractice, *i.e.*, that a professional failed to perform services with due care and in accordance with the recognized and accepted practices of the profession, is governed by the three year statute of limitations applicable to negligence actions stated in CPLR 214[6]."); Pecoraro v. M & T Bank Corp., 782 N.Y.S.2d 481, 483 (N.Y. App. Div. 2004) (stating that gross negligence claims fall under same statute of limitations period).  New Jersey, however, applies a six-year limitations period to professional negligence claims that result in injury to property.  See Binder v. Price Waterhouse & Co., L.L.P., 393 N.J.Super. 304, 310 (App. Div. 2007) (citing N.J.S.A. 2A:14-1).  Thus, there is a conflict between New Jersey and New York law with respect to the statute of limitations period.

Because an actual conflict exists between New Jersey and New York law, the Court must apply the Restatement's most significant relationship test to determine which law applies.  The contacts to be considered under section 145—the section applicable to negligence claims—are:

> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

23

> (d) the place where the relationship, if any, between the parties is centered.

Restatement (2d) Conflicts, § 145(2).  As illustrated by this Court's analysis of Restatement § 148, there are similar factors under Restatement § 145 that require further factual development, including where the injury occurred (since the effect was felt in New Jersey but the property was located in New York) and the place where the conduct (here, the alleged misrepresentations) occurred.  Thus, for the reasons expressed above, I find it inappropriate to make a final choice of law determination at this juncture and turn to the application of the forum state law for purposes of this motion.  Because I apply New Jersey law, Defendant's statute of limitations challenge fails and I reach the merits of whether Plaintiff has stated a claim for gross negligence.

Goodman has not sufficiently pled a claim for gross negligence.  Reading Plaintiff's Complaint in the light most favorable to him, the Complaint alleges the traditional negligence elements of duty, breach, causation, and damages.  Plaintiff alleges that Goldman Sachs owed him a duty to provide him financial advice with reasonable skill and care, that Goldman Sachs breached that duty by failing to warn him that his investment was over-concentrated in alternative investments such as the Madoff Fund, and that Goldman Sachs' failure caused him to lose over 15 million dollars in principal.  But, as noted, a gross negligence claim requires allegations of reckless conduct that border on intentional wrongdoing, and Plaintiff has failed to make any such allegations.[10]

Indeed, Plaintiff's own citation to Erlich v. First Nat'l Bank of Princeton, 208 N.J.Super. 264 (Law. Div. 1984), proves this point.  In Erlich, the New Jersey Law Division held that an investment

---

[10]   Plaintiff cites Ivy Hill Park Section III, 362 N.J.Super. 421 (App. Div. 2003), for the proposition that he need not plead reckless conduct because "because the degree of negligence is a question of fact for the jury," Pl. Opp. at 17, but Ivy Hill Park is unhelpful to him.  It is true, as that court states, that the degree of negligence is a factual question.  Id. at 425.  On a motion to dismiss, however, the question is whether the Complaint alleges *any* facts from which a reasonable jury could ultimately find that the defendant acted recklessly.   A plaintiff is not entitled to reach the jury stage if he fails to plead the proper facts in his complaint.

advisor may be liable for professional negligence when he fails to prudently advise his client to diversify.  Id. at 293-94.  In so holding, that court looked to the industry standards for investment advisors and, based on those standards, concluded that the advisor-defendants in that case "owed [the] plaintiff a duty . . . not to recommend . . . purchases inconsistent with diversification."  Id. at 294.  Noticeably absent from Erlich, is any mention of gross negligence, reckless conduct, or conduct bordering on intentional wrongdoing.  Rather, Erlich describes the behavior of the advisor-defendants in that case as simply garden-variety negligent.  So too do Plaintiff's allegations in this case; they do not state a claim for *gross* negligence.

Moreover, unlike the facts in Erlich, Plaintiff has not sufficiently alleged that Goldman Sachs served as his investment advisor.  As noted in connection with my fiduciary duty analysis, Plaintiff's allegations fall short in that regard and, because Plaintiff has not pled an investment advisor relationship, his reliance on Erlich is generally misplaced.  Accordingly, Defendant's motion to dismiss the gross negligence claim is granted.[11]

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED; Plaintiff's claims are dismissed without prejudice.  This case is CLOSED.

/s/ Freda Wolfson
United States District Judge

DATED: December 14, 2010

---

[11]   Lastly, Defendant's argument that the Complaint is preempted by New York's Martin Act, N.Y. Gen. Bus. Law §352, et seq., need not be addressed since New Jersey law applies to this motion.